7 So.2d 17

**PROVIDENT LIFE & ACC. INS. CO., OF CHATTANOOGA, TENN., v. DOWNEY.**

**6 Div. 982.**

Supreme Court of Alabama.

March 19, 1942.

Wm. S. Pritchard and David R. Solomon, both of Birmingham, for appellant.

Smith, Jackson & Rives, of Birmingham, for appellee.

BOULDIN, Justice.

The action was upon a policy of insurance to recover the benefit payable for the loss of the entire sight of one eye, resulting directly and exclusively of all other causes from bodily injury sustained solely through external, violent and accidental means. The policy had a further clause stipulating that disability due partly to accidental injury and partly to disease or bodily infirmity was not within the coverage of the policy.

Appellant earnestly insists it was entitled to the affirmative charge, with hypothesis. The refusal of such charge presents the main question in the case.

The plaintiff's evidence tended to show the following: He was a locomotive engineer, had reached the age of sixty-nine years. His health and eyesight still good, he was examined periodically and continued in active service. While on his run during the night of February 27, 1939, a hot grain of sand struck his right eye, inflicting pain, and blinding him for the moment. He and his fireman failed to locate and remove it. The pain persisting he went on March 1, 1939, to Dr. James A. Livingston, eye specialist of his company, who failed to locate this object in his eye, and treated him as per diagnosis not based on continued presence of the object in the eye. This treatment continued for several weeks. The pain persisted, plaintiff insisting the object was still in the

eye. Others, including plaintiff's daughter, failed to locate it. After nine days, Mr. W. A. Cobb, a car inspector making examination at plaintiff's request did discover the object, and removed it with the point of a pencil. The eye was watering. The object had some kind of matter on it. The grain of sand, said to be about as large as the head of an ordinary pin, was introduced in evidence. The trouble persisted, the vision in that eye deteriorated, and about May 1, 1939, came the entire loss of sight in that eye. His general health was good; the other eye remained normal.

Defendant's evidence, relied upon as a basis for the affirmative charge consists, in the main of the testimony of Dr. Livingston, and of Dr. L. G. Brownlee, another eye specialist. Briefly stated their testimony was that an examination of the eye with the aid of an ophthalmoscope clearly disclosed that the loss of vision was caused by retinal hemorrhage, massive hemorrhage, otherwise called venous thrombosis, or blockage of a vein, a condition of the inside rear portion of the eye from which the retina could no longer function; that such condition may arise from many causes; that no traumatic injury causing such condition could result from the impact of a grain of sand with the cornea in front of the eye, etc.

Appellant strongly relies upon our decisions holding an affirmative charge, with hypothesis, should be given upon the clear, uncontradicted and unimpeached evidence of expert witnesses, including members of the medical profession, based on facts discernible with the aid of scientific instruments, learning and experience; facts outside the knowledge of the layman. Commonwealth Life Ins. Co. v. Harmon, 228 Ala. 377, 153 So. 755; Grabove v. Mutual Benefit Health & Accident Ass'n, 241 Ala. 88, 1 So.2d 297, and authorities there cited.

We refer to these cases for a full statement of the rule and its application.

■ For present purposes we merely state the obvious rule that the weight of such testimony is subject to all the rules pertaining to the testimony of other witnesses within the realm of their knowledge. Among these rules may be noted other statements expressive of opinions at variance with those given in court.

In the report of Dr. Livingston, as attending physician, on forms furnished by the insurer, we find the following questions and answers:

"6. When did you first attend him for this injury? Mar. 1st, 1939."

"7. Describe his condition at your first visit Inflamed conjunctiva right eye."

(Mark injury on chart on reverse side)

"8. Did you find any evidence of former impairment, old injury or disease of either eye? No."

"12. Describe the injury, with symptoms, specifically Inflammation and trauma."

"13. What distinctive or positive evidence of traumatism did you find? Wound."

"30. Did any disease or cause, other than the injury referred to, operate as a complication or contribute to the result in this case? No."

■ Dr. Brownlee's examination with instruments, taking his statement as to date, was on May 8th, after loss of sight was virtually complete. Other evidence was to the effect that his was the only examination of the kind. Other evidence attributed to both physicians expressions of opinion that the injury could have been caused from the accident on which plaintiff relies. Dr. Livingston on the trial evidently discounted the contention that the object was still in the eye as testified to by plaintiff and Cobb. Without further detail we conclude the issues were for the jury. We are not impressed their finding was so palpably and clearly wrong as to warrant our setting aside the verdict.

■ The argument of plaintiff's counsel to which objection was made and exception reserved was the expression of a critical opinion of the attitude of the insurer toward plaintiff's claim. Such argument, however far-fetched or unfounded the inference, is not of the class for which judgments are reversed. Cross v. State, 68 Ala. 476.

The policy had an "accumulation" clause limited to 50% of the principal sum. It also had a "Special Accumulation Indorsement."

But this indorsement stipulated "the total of all accumulations shall not exceed 50% of the original principal sum of this policy." The original principal sum for loss of sight of one eye was $500. The accumulations were limited to $250. The

total recovery was limited to $750, with interest from maturity to the date of the trial.

The trial court fixed the date of maturity at the date proof of loss was received. This, the record discloses was June 6, 1939, or thereabout. No exception was reserved to the court's instruction.

The verdict should have been for $750 plus interest to date of trial, January 22, 1941, namely, $823.25. The verdict was for $948. The jury seems to have included an item claimed in Count 2 of the complaint, which was stricken by given charge for defendant.

■ The ground of the motion for new trial based on excessive verdict was well taken.

■ The usual order will be entered under Title 7, § 811 of the Code, permitting a remittitur of the excess above shown within thirty days to be followed by further orders in accordance with said Section.

Affirmed conditionally.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.