Appeal by State Farm Mutual Automobile Insurance Company from a decision adverse to it in a declaratory judgment action. We affirm.
State Farm initiated the action praying that the trial court would determine that no insurance coverage was afforded the insured, William E. Boyer, under a policy of insurance previously issued to Boyer by State Farm. The policy contained the following clause:
USE OF NON-OWNED AUTOMOBILES
 If the named insured is a person or persons, and if during the policy period such named insured owns a motor vehicle covered by this policy and classified as `pleasure and business', such insurance as is afforded by this policy with respect to the owned motor vehicle under;
 (1) coverages A and B applies to the use of a non-owned automobile by:
(a) the first person named in the declarations or,
 (b) if residents of the same household, his spouse, or the relatives of either, and
 (c) any other person or organization not owning or hiring such automobile, *Page 960 
but only with respect to his or its liability for the use of such automobile by an insured as defined in sub-sections (a)(b) above; ....................
 PROVIDED SUCH USE, OPERATION OR OCCUPANCY IS WITH THE PERMISSION OF THE OWNER OR PERSON IN LAWFUL POSSESSION OF SUCH AUTOMOBILE AND IS WITHIN THE SCOPE OF SUCH PERMISSION.
While this policy was in force Deborah Boyer, the insured's daughter, was involved in an accident while she was driving a non-owned automobile of her friend, Charlotte Dunn. The circumstances of that incident raised the question of whether Deborah was driving the non-owned automobile within the scope of the permission granted to her by Charlotte. The evidence at trial was extensive even though the defendants elected not to call any witnesses. At the conclusion of the evidence State Farm moved for a directed verdict; the trial court, however, submitted two written interrogatories to the jury under Rule 49 (b), ARCP, one of which asked:
 Was the use by Deborah D. Boyer on April 26, 1976, of the Buick automobile within the scope of the permission given or granted to Deborah D. Boyer by Charlotte Dunn, the daughter of Christine Dunn?
Judgment was entered upon the jury's affirmative finding. The denial of the plaintiff's motions for a directed verdict, judgment N.O.V., and a new trial constitute some of the claimed errors on this appeal. These rulings necessitate a review of the evidence on the scope of the permission granted to Deborah by Charlotte.
That evidence established that Charlotte Dunn and Deborah Boyer attended the same high school. On the occasion in question they had ridden to school in the Dunn automobile, and, according to Charlotte, during their second period class Deborah asked Charlotte to allow her to borrow the Dunn car to go to the store for a coke. This store is about 7/10 mile west of the school. Deborah had borrowed the Dunn car on several prior occasions for the same purpose, although Charlotte did not know on those occasions which store Deborah was going to. According to Charlotte, about 10:20 a.m. Charlotte gave Deborah the keys, telling her to "go to the store and come right back." It was Charlotte's idea that it would take about fifteen to thirty minutes. The accident occurred at a point about 1/2 mile east of the school. When Deborah failed to return the keys during the remainder of the school day, Charlotte began to look for her around 3:20.
On cross-examination at a later stage, however, charlotte stated:
 Q And you really didn't know when Debbie was going to be back, did you?
A No, sir.
 Q Fact is you assumed that she may come back a certain time, but you looked for her back after school was out, is that right? (emphasis added)
A Yes, sir.
(There is evidence in the record that school ended for the day at 3:05 P.M.) And still later:
 Q Charlotte, you testified earlier that on or about the period of time when you last saw Debbie Boyer on April 26, 1976, that you thought it would take about 15 or 20 minutes to go to the store?
A Yes, sir.
 Q This was — this was communicated between you and Debbie?
A Yes, sir.
 Q And in what manner? What I am saying — do you understand my question, Charlotte?
A No, sir.
 Q What I am saying is did you say anything to Debbie about just being gone fifteen or twenty minutes or did you just tell her to go to the store?
A I just told her to go to the store.
 Q You told her something about going to the store and hurrying back?
A Yes, sir.
 Q But there was no mention by you or her on this occasion about being gone just 15 or 20 minutes?
(emphasis added)
A No, sir. *Page 961 
 Q This is just something that you thought in your own mind?
A Yes, sir.
 Q And you again did not know what time she would depart the school grounds nor when she would be back?
A No, sir.
 Q And did you know which store she had planned on going to?
A No, sir.
 Q Was this trip in your understanding just her trip?
 A Yes, sir.
(Emphasis added)
Q Was she going to do anything for you?
A No, sir.
Q Did you know of anybody going with her?
A No, sir.
 Q So it was just a trip whereby you let her use your mother's car which you had?
A Yes, sir.
Q For her benefit?
A Yes, sir.
Q For her pleasure?
 A Yes, sir.
(emphasis added)
Another witness, Dawn Davis, testified that she overheard a conversation on the day in question regarding Deborah's borrowing Charlotte's car, and that she heard Charlotte tell Deborah to go to the store and come right back.
Portions of the deposition of Deborah Boyer, a party defendant, were introduced by State Farm. Her testimony was that while the two of them were in assembly, earlier that morning, she asked Charlotte to let her borrow the car around 11:30, telling Charlotte that she was going to run up to the store. According to Deborah, Charlotte said "Okay." When she left the school she was not planning to go anywhere except to the store and straight back, but following her trip to the store she rode around town, occasionally stopping to visit with friends she encountered, until she began to return to the school when the accident occurred. Doubtless this testimony was introduced by State Farm to reveal Deborah's actual use of the automobile, but part of it also tended to establish a lack of positive instructions from Charlotte on the use of the automobile, contrary to some of Charlotte's testimony on both direct and cross-examination.
In determining whether it was error to overrule the plaintiff's motion for a directed verdict, the evidence must be viewed in a light favorable to the defendant, and if any reasonable inference might be drawn adverse to the plaintiff's position that the automobile was used outside the permission granted, it was proper for the trial court to overrule the motion and let the issue be resolved by the jury. Alabama PowerCo. v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975); StonewallIns. Co. v. Lowe, 291 Ala. 548, 284 So.2d 254 (1973). As we view the evidence in this case, a jury question was presented on whether Charlotte Dunn gave any limiting directions, and thus whether Deborah was driving the car within the scope of her permission at the time of the accident. On the other hand, Charlotte's testimony on direct examination established a limiting permission. But when we consider this evidence in connection with her cross-examination and that portion of Deborah Boyer's deposition introduced by State Farm, adverse inferences against the plaintiff's position become apparent, for Deborah deposed, in effect, that no limiting instructions were given to her.
In this stage of the evidence, it was the proper course for the trial court to refuse to direct a verdict for plaintiff, State Farm:
 It is well established that, if there be any evidence which tends to prove or to disprove the plaintiff's cause, the trial court should not withdraw the issue of fact from the jury. It is not for the court to judge of the sufficiency of the evidence or decide which of the conflicting tendencies of the evidence should be adopted by the jury, nor to draw the reasonable inferences from the evidence for the jury. . . . *Page 962 
 `A court should never direct a verdict when the evidence is such as to afford a reasonable inference of the existence of any fact unfavorable to the right of the party asking the affirmative charge to the verdict.' . . . Jones v. Bell, 201 Ala. 336, 77 So. 998 (1917).
In civil cases, the question must go to the jury if the evidence arising therefrom furnishes a scintilla in support of the theory, Huff v. Vulcan Life and Accident Ins. Co., 281 Ala. 615, 206 So.2d 861 (1968) (testimony of attending physician in action by insured against insurance company); Glass v. Davison,276 Ala. 328, 161 So.2d 811 (1964) (testimony of employee in action by minor against employer); Southern Apartments, Inc. v.Emmett, 269 Ala. 584, 114 So.2d 453 (1959) (testimony of employee in action by tenant against landlord); Parkinson v.Hudson, 265 Ala. 4, 88 So.2d 793 (1956) (testimony of party favorable to opponent as well as to himself); Sloss-SheffieldSteel Iron Co. v. Littrell, 246 Ala. 58, 18 So.2d 744 (1944) (testimony of plaintiff and others in action based upon negligence and subsequent negligence; Edwards v. Earnest,206 Ala. 1, 89 So. 729 (1921) (testimony of an employee-driver in action by pedestrian against employer).
The appellant also contends that the trial court erred when it instructed the jury that the burden of proof in this declaratory judgment action was upon the plaintiff, State Farm. Conceding a division of authority among the various state jurisdictions, the appellant maintains that the better reasoning would place the burden where it would be if the insured had brought an action on the policy. That question, however, has been decided already in General Ins. Co. ofAmerica v. Killen, 270 Ala. 604, 120 So.2d 887 (1960) in which this Court held that a fire insurer which sought to have nonliability declared because of noncompliance with a policy provision had the burden of proving the existence of that policy provision. And in Alabama Farm Bureau Mut. Cas. Ins. Co.v. Cofield, 274 Ala. 299, 148 So.2d 226 (1962), in which the insurance company sought a declaration that it was not obligated to defend a pending action because of a violation of the "cooperation clause" contained in the policy, we held that the burden of proving those allegations was on the complainant. These cases have taken the position, properly we believe, that the insurer who seeks a declaration of relief from the terms of the policy which it has issued bears the burden of proving its entitlement to that relief. Because the plaintiff-insurer here seeks such affirmative relief the trial court's instruction regarding plaintiff's burden was proper.
State Farm also maintains that the trial court committed reversible error by refusing the following charge requested by the plaintiff:
 I charge you, any prior inconsistent statement made by any of the witnesses who testified in this case should not be considered by you as substantive evidence but should be considered by you only to the extent that it would reflect on the credibility of the witness making such prior inconsistent statement.
This charge was properly refused because it did not instruct the jury of the charge's relation to the issues being litigated. L. N.R. Co. v. Dollar, 294 Ala. 276, 314 So.2d 867
(1975); Bagley v. Grime, 283 Ala. 688, 220 So.2d 876 (1969). The principal issue in this case was whether the use of an automobile was within the scope of the permission of the person in lawful possession of it. Apparently by requesting this charge the plaintiff wished to have the jury instructed that it could not consider Charlotte's inconsistent statements contained in her deposition as substantive evidence on the issue of her instructions to Deborah. This charge, however, does not clearly relate to that issue. Moreover, the charge is confusing because it fails to define a prior inconsistent statement, and it is misleading because it fails to distinguish rules applicable to such statements made by parties from those made by witnesses who are not parties. Hamilton v. Browning,257 Ala. 72, 57 So.2d 530 (1952); Engel v. Davis, 256 Ala. 661,57 So.2d 76 (1952). *Page 963 
The appellant also claims as error the trial court's overruling its objection to the following question which, appellant states, was asked by defense counsel to Charlotte Dunn:
 Did she, in your own mind, use the car within the scope of the permission for which she had borrowed the car?
The record does not support the appellant's contention that this was error, principally because it reveals that State Farm's counsel, not defense counsel, first elicited this question before the jury. The record shows that on Charlotte's cross-examination defense counsel alluded to a Mr. Sanders who had asked Charlotte questions at her home, and also asked her whether she had gone over "the statement." Then the following occurred:
 Q Would you read that question, the question where it says —
A `So she did —'
THE COURT: I can't hear her.
MR. KEY: Could you show it to the Court David?
 THE COURT: Well, the answer is already in I assume. I will overruled the objection. It is not going to bind the Court or the Jury either one.
MR. KEY: Could we perfect our objection?
THE COURT: Yes, sir.
 MR. KEY: Can I borrow your statement? We object to the reading of the question —
MR. NELSON: I can't hear Mr. Key.
 MR. KEY: Well, come up here, Dan. We object to the question —
 THE COURT: If you make an objection it has to be to me. I have to hear it.
 MR. KEY: Yes, sir. We object to the question `She did in your own mind use the car within the scope of your permission for which she borrowed the car' on the ground that invades the province of the Jury. That is the question for the Jury to decide.
 THE COURT: I will allow it for — I won't allow it for whether she did or not. I will allow it from this witness on a statement she made in connection with her other testimony. For that limited offer I will let it go in. I will overrule your objection and give you an exception.
 MR. KEY: On the further ground it does not contradict any statement she has given in her testimony here today, therefore it is not proper impeachment.
 THE COURT: Overruled. I don't know if it is impeachment, but it is cross examination.
 Q (BY MR. CAUTHEN:) Charlotte, that last question on page 6 is so she — `Did she in your own mind use the car within the scope of permission in which she borrowed the car?' and your answer was `Yes, sir.'
 MR. KEY: Your Honor, we would like to again object and reserve our objection.
 THE COURT: I will give you the same objection and same ruling and your exception. I consider that a timely objection so the record won't show you waived it.
MR. KEY: All right.
Q (BY MR. CAUTHEN:) Your answer is yes, sir?
A Yes, sir.
MR. CAUTHEN: That is all.
It can be readily observed that this question which was apparently contained in a previous statement made by Charlotte to Mr. Sanders was initially proved at the trial by the counsel who now complains that it was error to admit it. If there was any error in its admission at that stage, therefore, the error was self induced, Bradford v. Birmingham Electric Co., 227 Ala. 285,149 So. 729 (1933); 2A Ala.Dig. § 882 (8), and plaintiff cannot now complain of the trial court's ruling, even if we consider, as the trial court did, that his objection was made in timely fashion. That is, although the appellant's objection was made in time, any error in the trial court's admission of the question was brought on by the appellant himself.
Appellant also contends that the trial court erred in overruling its motion for a mistrial when counsel for one of the defendants referred to appellant as "the big insurance company." *Page 964 
The record shows that objecting counsel first asked "for an appropriate instruction to the jury to eradicate the prejudicial effect of it." The trial court complied with this request:
 THE COURT: All right. Ladies and gentlemen, the relative size of these parties as concerns the justice of the cause and how you return the answer to the interrogatory should be no part of your consideration, and with that I will stop. Go ahead.
Then counsel asked for a mistrial.
First of all we note that the entire argument is not included in the record and there is not, therefore, enough revealed to identify the context of what was said to justify a conclusion that the remarks were improper. Housing Authority of City ofDecatur v. Decatur Land Co., 258 Ala. 607, 64 So.2d 594 (1953). In the matter of counsel's closing argument much must be left to the trial court's judgment, and his rulings are presumed to have been sufficient to remove any opprobrium unless the record reveals substantial prejudice. Birmingham Electric Co. v. Mann,226 Ala. 379, 147 So. 165 (1933). We are not persuaded that any such prejudice existed after the trial court's admonition given immediately after the objection.
The same response would be applicable to another portion of defense counsel's summation before the jury, viz.:
 Anytime State Farm or any of those insurance companies can get out of paying based on one of these clauses they will do it. . . .
We disagree that this statement is patently illegal or that it was calculated solely to create bias against the plaintiff. Indeed, the entire case represents an effort by State Farm to avoid liability based upon the scope of permission clause, and because that theory was present in the case it was not improper to argue the point. It appears to us that this argument was a permissible "expression of a critical opinion of the attitude of the insurer." Provident Life Acc. Ins. Co. v. Downey,242 Ala. 482, 7 So.2d 17 (1942). For that reason it was not reversible error to overrule the objection to it.
Our review of the record convinces us that it was not error for the trial court to overrule the motion for a new trial. The jury's verdict is supported by competent evidence, and the trial court's refusal to grant a new trial strengthens the presumption of its correctness. Blount Bros. Construction Co.v. Rose, 274 Ala. 429, 149 So.2d 821 (1962).
For these reasons the judgment is due to be, and is, affirmed.
AFFIRMED.