EDWARD N. SCRUGGS, Retired Circuit Judge.
The plaintiff sought damages for fraud. The jury returned a verdict in favor of the plaintiff for $1,525, judgment was entered in accordance with the verdict and the defendant appeals. We affirm.
The plaintiff was the only witness to testify. When the plaintiff rested her case, the defendant filed a written motion for a directed verdict, and, shortly thereafter, refiled it when it also rested without presenting'any evidence. A motion for a judgment notwithstanding the verdict or for a new trial was filed by the defendant. Each of such motions was overruled by the court.
The question on appeal concerns the sufficiency of the plaintiff’s evidence to prove that the defendant committed a legal fraud. We briefly summarize some of the tendencies of the evidence which are favorable to the verdict.
On July 27, 1977, the plaintiff visited the defendant’s automobile business in order to obtain an estimate of the cost of repairs to be made to her automobile. She spoke to Ted Heflin, a salesman-employee of the defendant. Mrs. Lattimore testified:
I asked him did they have an auto-body repair shop and he told me no and he stated that there was a Chevrolet place that had one. And that was-that was it. That was what I went there for, so, just as I was getting ready to leave he asked me did I want to look at some of the cars on the lot, so I told him I wasn’t in the-wasn’t ready to buy a car at that time and-I walked into the lot and saw a car that I liked which was a Cougar that I purchased and I told him I would be back in December-I would be ready to buy in December, so, he asked me, says you should go on now and try to get you a car and I told him that I just didn’t have the money at the time, you know, so-he asked me to take the car for a test drive. The two of us went for a drive in the car and when we came back I went to get out and told him I still wasn’t interested in buying then, so, I told him that I hadn’t been on my job long enough and didn’t have any credit in the State of Alabama, so, he asked me how long had I been on the job that I was on.
Mr. Heflin filled out a credit application on her behalf and she signed it. That afternoon Mr. Heflin telephoned her and informed her that she could pick up the car. She told him that she did not have the down payment, to wait until the next week, but the salesman insisted that it was her car, and that she should pick it up then, as her *943 credit had been approved. She returned to the defendant’s business location and Mr. Heflin suggested that she give a post-dated check for $1,338.43 for the down payment to be held by the defendant until she notified him to negotiate it. She informed Mr. Heflin that it would be necessary for her to obtain the money from her ex-husband.
Before Mrs. Lattimore executed the installment contract, she explained to him that, of necessity, she would have to be late in paying the first two payments and inquired of him as to “what would they do to me by being late the first two payments, and he told me nothing; I would have to pay a late charge.... ” He did not apprise her that the car could be repossessed in the event of default. She swore, “I wouldn’t have signed that contract, period, if the salesman hadn’t told me that my first two-if my first two payments was going to be late all I would have to do is pay a late charge and make all the other payments on time. I wouldn’t have signed that contract.” In substance, in attempting to sell an automobile on behalf of the defendant, its salesman assured her that “there wouldn’t be anything done about my car if I was late for the first two payments,” and this is what she was misinformed about or defrauded by the defendant.
The monthly installments were due on the second day of each month commencing on September 2, 1977. She signed the contract and gave the down payment post-dated check for $1,338.43 and, additionally traded in a vehicle for a trade-in value of $995.50.
Two weeks after the transaction, the defendant repossessed her car and then notified her that her down payment check had been returned because of insufficient funds. Her ex-husband had previously been unavailable, but she obtained some money from him and paid to the defendant around $900 in cash as well as issuing a new check for the balance of over $400. This check was later returned to the defendant.
On September 26 she paid the September installment by a check for $161.45, which included the $10 late charge. On November 2 Ford Motor Credit Corporation (FMCC), who, we assume, had become the assignee of the parties’ contract, repossessed the car. At that time she rode with them to the defendant’s place of business and spoke to Mr. Hughes, who told her that they took the car because the $400 check had been returned to the motor company. They agreed that she would return two days later and redeem the check, at which time she would received her car back. On November 4 she paid to Mr. Hughes, and he accepted it for the defendant, cash for the entire balance due upon the down payment. She also gave to him two cashier’s checks payable to the credit company for the October and November installments. The October payment was delinquent and that check included the $10 penalty for a late installment. The November payment would not have been delinquent until November 12. FMCC refused to accept the checks and never cashed either of them. FMCC further refused to release the car to her, and it was kept by them.
In instructing the jury, the trial judge did not charge the jury as to punitive damages, but limited any damages which might be awarded by the jury to compensatory damages only.
The proper course was for the trial court to refuse to direct a verdict for the defendant. In State Farm Mutual Automobile Insurance Co. v. Boyer, 357 So.2d 958 (Ala. 1978), the governing rule was stated as follows:
It is well established that, if there be any evidence which tends to prove or to disprove the plaintiff’s cause, the trial court should not withdraw the issue of fact from the jury. It is not for the court to judge of the sufficiency of the evidence or decide which of the conflicting tendencies of the evidence should be adopted by the jury, not to draw the reasonable inferences from the evidence for the jury ...
“A court should never direct a verdict when the evidence is such as to afford a reasonable inference of the existence of any fact unfavorable to the right of the *944 party asking the affirmative charge to the verdict.” . . . Jones v. Bell, 201 Ala. 336, 77 So. 998 (1917).
In civil cases, the question must go to the jury if the evidence arising therefrom furnishes a scintilla in support of the theory, ....
All issues raised by the defendant upon this appeal concern the sufficiency of the facts. We have scrutinized the record and find that a jury question was presented by the evidence. The plaintiff’s evidence was adequate to prove her case. The trial judge correctly submitted the case to the jury for their decision. The verdict of the jury is presumed to be correct, and the refusal by the trial judge to grant a new trial adds verity to the propriety of the verdict and, thereby, strengthens the presumption in its favor. 2A Ala.Dig., Appeal & Error, Key No. 930(1). We cannot say that the jury’s verdict was wrong, for it was supported by the evidence. After a careful review of all of the plaintiff’s testimony, we are convinced that there was, at least, a scintilla of evidence as to each and every element of fraud so defined by § 6-5-101, Code of Alabama (1975) and as this and companion code sections have been refined by judicial decisions.
We affirm.
The foregoing opinion was prepared by retired circuit judge EDWARD N. SCRUGGS, while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code of Alabama (1975). His opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.