Defendant appeals from a $40,000.00 judgment entered in favor of the plaintiff for damages to plaintiff's property following an oil spill and as a result of the defendant's oil operations on plaintiff's land. The defendant claims error by the Circuit Court of Mobile County in its denial of his post-trial motions and in the trial court's submission of certain issues to the jury. We affirm.
The plaintiff, Vester Morgan, Inc. (Morgan), filed a complaint against I.N. Hickox, Unit Manager, Citronelle Unit, seeking the recovery of damages as a result of several events which took place on plaintiff's property. The property involved is a 40-acre tract of land in Mobile County in which the mineral and surface rights have been severed. Morgan is the owner of the surface rights.
Hickox, the legal representative of the Citronelle Unit (a large group of oil and gas producers who operate the unit field for the mutual benefit of the group as a whole) is engaged in the extraction of oil and gas on the Morgan property. This property is included in the Citronelle Unit. On or about December 15, 1980, a power oil line belonging to the Citronelle Unit erupted and caused a spill of approximately 30 barrels of oil on property northwest of the Morgan property. The oil entered a small creek which carried it into low lying areas on the Morgan property. A road was bulldozed down a hill to the creek by Hickox in an attempt to reclaim the oil. Morgan was not informed of the spill, but discovered it when on the property during Christmas holidays. The defendant claims every effort was made to protect and restore the land following the spill.
The plaintiff, however, not satisfied with the way the spill and resulting clean-up were handled, and because of other events which had occurred on his property, filed this lawsuit. The complaint as amended sought recovery for damages on several counts and reads in pertinent part as follows:
"FIRST CAUSE OF ACTION
"1. Heretofore and on, to-wit, November or December, 1980, Defendant I.N. Hickox, Unit Manager, Citronelle Unit, A, B and C as owners of the pipeline running over and across properties of the Plaintiff, did so negligently maintain said line as to allow it to get into a state of disrepair and as a result of said negligence said pipeline burst, came disconnected, or otherwise erupted to cause an oil leak or spill onto, over and upon the lands of the Plaintiff.
"2. As a direct and proximate result of the negligence of Defendants as aforesaid, and the resulting oil leak or spill therefrom, Plaintiff's lands were injured and damaged in that they were sprayed with oil, trees and shrubbery were damaged and injured, *Page 97 
natural water flow across Plaintiff's property was polluted by oil and Plaintiff's property was rendered of less value.
". . .
"SECOND CAUSE OF ACTION
". . .
"2. Heretofore and on, to-wit, December 15, 1980, said Defendants did trespass upon Plaintiff's land in violation of any privilege or license possessed by them in that during December, 1980, said Defendants did allow oil to flow over and upon Plaintiff's property, brought heavy equipment onto Plaintiff's property, i.e., a bulldozer or other similar type of equipment, and on property of the Plaintiff did excavate lands, remove trees, grass, shrubbery and other natural growth in an area approximately thirty (30) feet in width by one hundred (100) yards in length. That as a result of Defendants' direct trespass in violation of Plaintiff's possessory rights and right to peaceful enjoyment of said property, and as a further result of the excavation of Plaintiff's property, said property is eroding.
". . .
"THIRD CAUSE OF ACTION
". . .
"2. Heretofore and on, to-wit, February, 1981, Defendants I.N. Hickox, Unit Manager of Citronelle Unit, and A, B and C were notified of their trespass upon Plaintiff's property and were further notified that as a result of the excavation of Plaintiff's land it was eroding and further deteriorating. Defendants were further notified that the continuous maintenance of a battery of oil tanks, commonly referred to as B-19-10 TB, upon Plaintiff's property was creating a nuisance in that said tanks were rusting, and allowing oil residue to flow out and upon Plaintiff's property. Defendants were further notified that the continued maintenance of a slush pond upon Plaintiff's property was a continued nuisance and was hindering the free use of Plaintiff's properties.
"3. Subsequent to said notice in February, 1981, Defendants in total disregard for the notice given to them in February, trespassed upon Plaintiff's property with heavy equipment, did excavate additional areas of Plaintiff's property consisting of approximately one acre of land and during such excavation did remove trees, shrubbery and other natural growth upon Plaintiff's property and did create another area for erosion of Plaintiff's land. That said trespass by said Defendants was with full knowledge of the notice given to them in February, and was done in a reckless and oppressive manner in total violation of the property rights of Plaintiff."
"FOURTH CAUSE OF ACTION
"1. Heretofore and on, to-wit, June 17, 1981, said Defendants did trespass upon Plaintiff's land in violation of any privilege or license possessed by them in that on that date and subsequent thereto, said Defendants brought heavy equipment on the Plaintiff's property, i.e., a bulldozer or other similar type equipment and on property of the Plaintiff did excavate lands, remove trees, grass, shrubbery, and other natural growth in an area approximately two hundred seventy (270) feet in length by four hundred (400) feet in width.
". . .
"FIFTH CAUSE OF ACTION
". . .
"2. Plaintiff alleges that the acts of the Defendants during and subsequent to the month of June, 1981, constituted an intentional nuisance in that the Defendants' actions constituted a severe and intentional interference with the use and enjoyment of Plaintiff's property. As a result of the actions of the Defendants, Plaintiff's property has been rendered of less value and Plaintiff has been denied the free and peaceful possession, use and enjoyment of its property.
". . .
"SIXTH CAUSE OF ACTION
". . .
"2. On, to-wit, June 15, 1981, and subsequent thereto, said Defendants did enter upon Plaintiff's land and, with heavy equipment, did bulldoze or excavate land, remove trees, grass, shrubbery, and other natural *Page 98 
growth in an area of approximately 2.5 acres. As a result of Defendants' entry onto Plaintiff's land, in violation of Plaintiff's possessory right to the peaceful enjoyment of its property, and in violation of any easement, license or privilege possessed by the Defendants, the Plaintiff has been denied the use, free and peaceful possession, and enjoyment of its property.
"3. The Plaintiff alleges that the acts of the Defendants constituted an impermissible private condemnation and taking of the Plaintiff's right to and in the peaceful possession, use and enjoyment of Plaintiff's property without just compensation.
". . .
"SEVENTH CAUSE OF ACTION
". . .
"2. This action is brought pursuant to Section 35-14-1 of the Code of Alabama (1975).
"3. The Defendants, in violation of any privilege or license possessed by them did, on to-wit, June 15, 1981, and subsequent thereto, trespass upon Plaintiff's land and cut down, deaden, girdle, destroy or take away hundreds of trees and saplings of the kind and variety described in Section 35-14-1 of the Code of Alabama (1975).
"4. The Plaintiff alleges that it was owner of the land and trees and that the Defendants' actions were done without the consent of the Plaintiff."
"EIGHTH CAUSE OF ACTION
". . .
"2. Heretofore and on, to-wit, December 15, 1980, Defendant I.N. Hickox, Unit Manager, Citronelle Unit, as owner of the pipeline running over and across property at or near property of the Plaintiff, did with gross negligence fail to maintain said pipeline as to allow it to get into a state of disrepair and as a result of said gross negligence, said pipeline burst, came disconnected, or otherwise erupted to cause an oil leak or spill onto, over and upon the lands of the Plaintiff.
". . .
"NINTH CAUSE OF ACTION
". . .
"2. Heretofore and on, to-wit, December 15, 1980, said Defendants did wantonly trespass upon Plaintiff's land in violation of any privilege or license possessed by them in that during December, 1980, said Defendants did allow oil to flow over and upon Plaintiff's property, brought heavy equipment onto Plaintiff's property, i.e., a bulldozer or other similar type of equipment, and on property of the Plaintiff did excavate lands, remove trees, grass, shrubbery and other natural growth in an area approximately thirty (30) feet in width by one hundred (100) yards in length."
At the close of the plaintiff's evidence, the defendant's motion for a directed verdict was denied by the trial court. Except for the claim for trees cut, the trial court granted Hickox's renewed motion for a directed verdict on Count IV, and on Morgan's private condemnation theory in Count VI. The trial court also denied the plaintiff's attempt to include a gross negligence count by amendment to the complaint; thus Count VIII was stricken. All other claims for relief were submitted to the jury for a determination of damages, including punitive damages where requested.
The defendant claims several errors by the trial court, including the trial court's denial of his motion for judgment notwithstanding the verdict or, in the alternative, an order granting a new trial. Hickox argues on appeal that his motions for directed verdict and for judgment notwithstanding the verdict should have been granted because there was not a scintilla of evidence to support the claims. More specifically, he contends that the trial court erred in submitting the following to the jury:
(1) All claims for punitive damages;
(2) All claims for relief under Code of 1975, § 35-14-1; and
(3) The claims regarding the oil tanks and containment pit in Count III of the complaint.
The rule with regard to a grant or denial of a motion for a directed verdict is *Page 99 
well settled in Alabama. The evidence presented must be viewed in a light favorable to the non-moving party, and if any reasonable inference might be drawn adverse to the movant's position, it was proper for the trial court to overrule the motion and let the issue be resolved by the jury. State FarmMutual Automobile Ins. Co. v. Boyer, 357 So.2d 958 (Ala. 1978);Alabama Power Co. v. Taylor, 293 Ala. 484, 306 So.2d 236
(1975). This Court in State Farm, supra, stated, at 961-962:
 "`. . . It is not for the court to [be the] judge of the sufficiency of the evidence or decide which of the conflicting tendencies of the evidence should be adopted by the jury, nor to draw the reasonable inferences from the evidence for the jury. . . .'
 "`"A court should never direct a verdict when the evidence is such as to afford a reasonable inference of the existence of any fact unfavorable to the right of the party asking the affirmative charge to the verdict."'" Quoting Jones v. Bell, 201 Ala. 336, 77 So. 998 (1917).
Alabama courts, following the scintilla rule in civil cases, have held that where the evidence furnishes a scintilla of evidence in support of the theory, the question must go to the jury. Huff v. Vulcan Life and Accident Ins. Co., 281 Ala. 615,206 So.2d 861 (1968). Applying these principles, we conclude that evidence was presented from which the trial court correctly submitted the case to the jury for determination.
Defendant argues that there is not a scintilla of evidence to support any of plaintiff's theories of recovery other than the negligence count on the oil spill, the tree damage for the construction of the new well site, and the tree damage for the road bulldozed to the creek following the oil spill. The evidence presented, however, established that Hickox owed money to the plaintiff for damage to the trees and surface, and had admitted this to the plaintiff but never made any efforts to pay. The evidence established that Hickox had paid some of the surrounding property owners for damage to their property.
Further, our review of the record discloses disputed evidence regarding the other theories under which plaintiff sought recovery. This supports the trial court's submission of these counts to the jury. With regard to the trespass claims, the defendant relies on the lease and unitization agreement under which he operates to provide the authority for his actions. He cites as support the following easement found in the unitization agreement:
 "12.1 Grant of Easements. The parties hereto, to the extent of their rights and interest, hereby grant Operators the right to use as much of the surface of the land within the Unit Area as may be reasonably necessary for the operation and development of the Unit Area hereunder; provided, that nothing herein shall be construed as leasing or otherwise conveying to Operators a site for a gas processing and extraction plant or camp site."
The agreement relied on by Hickox, however, goes on to state:
 "12.3 Surface damages. Operators shall pay the rightful owners for damages to growing crops, timbers, fences, improvements and structures on the Unit Area resulting from operations thereunder."
With regard to the defendant's repeated reference to his reliance on the leases as well as the unitization agreement, he fails to point out to this Court any provisions in the leases which support his position. Further, our review of the record leaves us without a provision which would directly support defendant's claims. We do note, as pointed out by the plaintiff, that the leases admitted into evidence contained the following provision in support of plaintiff's position:
 "8. Lessee shall bury its pipelines below plow depth when requested by Lessor. No well shall be drilled nearer than two hundred (200) feet to the house or barn on said land without the written consent of Lessor, and Lessee shall be responsible for all damages caused by Lessee's operations other than damages *Page 100 necessarily caused by the exercise of the rights herein granted. No injections of fluids herein authorized shall be made in fresh water strata which are capable of furnishing Lessor fresh water for irrigation, domestic or stock uses." (Emphasis added.)
The facts and the evidence of the present case should be viewed in the light of these provisions. Whether Hickox's actions were authorized under the lease and unitization agreement or whether defendant exceeded the scope of his authority, thus becoming a trespasser, were questions for the jury. Tutwiler v. Etheredge, 285 Ala. 219, 231 So.2d 93 (1970). In addition, Rushing v. Hooper-McDonald, Inc., 293 Ala. 56,300 So.2d 94 (1974), stands for the proposition that a jury question was presented as to whether the actions of Hickox in allowing the oil to spill constituted a trespass. Both the action in clearing for the new well site and the question of the extent to which the surface might be reasonably occupied for the new well site was also a proper question for the jury.Williams v. Gibson, 84 Ala. 228, 4 So. 350 (1887).
The defendant next claims the trial court erred in submitting any claims for relief under Code of 1975, § 35-14-1, to the jury. He contends that the trees were cut under an honest belief that he had the right to cut the trees and that the easement quoted earlier from the unitization agreement authorized the cutting.
It is true that § 35-14-1 is a punitive statute aimed at deterring defendants from cutting trees on property they do not own. Evidence was presented which posed a question of fact for the jury as to whether defendant was within the terms of the statute. Hickox was not the owner of the trees, and he knew that Morgan was the owner. Hickox took the trees and had not paid for these trees. The trial court gave an extensive charge to the jury on each count in the complaint and especially with regard to § 35-14-1 and as to defenses available to Hickox. A part of that instruction is as follows:
 "There is another charge that I will give you, and I will give that now, so that there will be no problem there. That the cause of action refers to this Section 35-14-1. Let me read that to you. It says that any person who cuts down, deadens, girdles, boxes, destroys or takes away if already cut down or fallen, any cypress, pecan, oak, pine, cedar, poplar, walnut, hickory or wild cherry trees or saplings of that kind on land not its own, wilfully, that's important, and knowingly, wilfully and knowingly, those are important words in this statute, without the consent of the owner of the land, must pay to the owner $20.00 for every such tree or sapling and for every other tree or sapling not hereinbefore described, so cut down, deadened, girdled, boxed or destroyed or taken away by any person, he must pay to such owner the sum of $10.00.
 "Now, the, this statute 35-14-1 is what we call a punitive statute. It's a statute made for punishment, and I will explain to you punitive damages later on, but this is a statute to punish a person for taking something that doesn't belong to him. It's a form of stealing. But timber was very important to our country in the early days, and this is a very old statute. This was first passed in 1867, a very old statute. It has been modified a little bit since that time, but basically it's a very old statute, and it was for a form of punishment.
 "But, on the other hand, if a person had a right to cut down the trees and timber, then he should not be punished for doing what they had the right to do, and therefore, this statute would not apply. In addition thereto, this statute does not apply unless it is shown that a person entered the property of another and cut down the trees of another, wilfully and knowingly. Remember I told you those were important words, if it is not proved that such action was in fact wilful and knowing, then this statute does not apply. It's a punitive statute.
 "If you believe from the evidence that Mr. Hickox honestly believed that he had the right to cut down the trees on the *Page 101 
drillsite or on the roadway that we have talked about, then you cannot find him guilty under this statute or that cause of action as stated pertaining to 35-14-1.
 "Now, on the other hand, I told you that, and I think everybody agrees that the Plaintiff should be compensated for the trees cut down, and the measure of damages there for such trees would be . . . the value of the trees. And if you believe that it was done, the cutting down of the trees was done wilfully and knowingly, and that there was no right to cut down these trees, or that Mr. Hickox did not honestly believe that he had the right to cut down these trees, then you may also grant punitive damages as provided for in 37-14-1."
We find no error on the part of the trial court in submitting this cause of action to the jury for a determination.
The defendant claims there was no evidence of wantonness which would justify the submission of any issue of punitive damages to the jury. There was evidence presented, however, of at least one oil spill prior to the one at issue here and Hickox knew he had no right to spill oil on Morgan's land. The evidence also established that Hickox knew he owed money to the plaintiff for damage to land for which he had made no effort to pay. Other evidence, including the fact that the plaintiff was not informed of the oil spill or subsequent clean-up but had discovered it, that the containment pit was covered by soil taken from another part of the Morgan property without Morgan's consent, and that Hickox had made no effort to pay for damage that he readily admitted he owed, raised a reasonable inference that Hickox's acts were intentional and that he knowingly invaded Morgan's rights as the surface owner. Wantonness in a trespass action is shown by mere "knowledge on the part of the defendants of the invasion of the plaintiff's rights." Calvert Marsh Coal Co. v. Pass, 393 So.2d 955 (Ala. 1980). Finally, as discussed in the previous section, from the evidence presented, the jury could have found that Hickox came within the purview of § 35-14-1, thus warranting punitive damages.
The defendant contends that he did not trespass by covering the sediment pit as set out in Count III. Vester Thompson, Jr., a witness for the plaintiff, testified however that Hickox, in filling the containment pit, should have "remove[d] the liquid oil first, and then sand in and walk it with the heavy equipment to make it dense." Further, testimony by Thompson showed that the material used in covering the sediment pit was taken from an adjacent area near the pit on the Morgan property. Other testimony by Mr. Morgan, the suface owner, with regard to covering the sediment pit, established that no permission was given for this action and that "they bulldozed from other parts of my land and brought the dirt over and put it in there." Clearly, this evidence presented a question from which the jury could have determined that this action did not fall within the authorized unit operations to extract oil and gas, and that these actions were not consented to by Morgan.
In his final point the defendant contends that the trial court erred in denying his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial because the jury verdict was against the weight and preponderance of the evidence and that the jury's award of damages was excessive. Assessment of damages is left largely to the discretion of the jury in the first instance and to the discretion of the trial judge on a motion for new trial. F.W. Woolworth Co. v.Bradbury, 273 Ala. 392, 140 So.2d 824 (1962). We have discussed the evidence presented and the fact that the issue of punitive damages was properly considered by the jury. Damages assessed by a jury are presumed to be correct and will not be set aside as excessive unless the amount is so great as to plainly indicate it was the result of passion, bias, prejudice, or improper motive. W.T. Ratliff Co. v. Henley, 405 So.2d 141
(Ala. 1981); Mobile Dodge, Inc. v. Waters, 404 So.2d 26 (Ala. 1981). Under these facts, we can find no reason to disturb the verdict *Page 102 
on the basis of the damages assessed by the jury.
We conclude that the trial court was not in error in the submission of this case to the jury and in denying the defendant's post-trial motions.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.