*980 issue of the amount of damages McBride was entitled to recover against Hicks, the uninsured motorist. The jury awarded McBride damages of $47,500. The court entered a final judgment against Acceptance in November 1993, ruling that McBride was entitled to stack coverages under the insurance policy issued to him by Acceptance.
Acceptance moved for a new trial or, in the alternative, to alter, amend, or vacate the judgment. On March 1,1994, the trial judge granted Acceptance a new trial on the grounds that McBride’s counsel had made “improper and highly prejudicial arguments” to the jury, although at trial Acceptance had not objected to those arguments.
In granting the new trial, the judge quoted the argument each party’s counsel had made at trial:
“In the initial argument to the jury, counsel for McBride [Nat Bryan] made the following argument:
“ ‘One thing that’s very important, ladies and gentlemen, that I told you about yesterday morning when I talked to you is this right here. This is a part of the policy that I have blown up. This insurance company, Acceptance Insurance Company, has the right to go after Mr. Hicks if you find against them. And they state, “If we make any payment, we are entitled to recover what we paid from other parties.” Donnie Joe Hicks. “Any persons to or for whom we make payment must transfer to us his or her rights of recovery against any other party.” John McBride would transfer his right to get that money from Donnie Joe Hicks. “This person must do everything necessary to secure these rights and must do nothing that would jeopardize them.’ ”
“ ‘MR. HICKS NEEDS TO PAY. I am standing before you as this man’s lawyer and telling you that. And I want him to pay. AND THIS INSURANCE COMPANY CAN MAKE HIM PAY. But what you’ve got to decide is, is he going to pay.’ [Emphasis supplied in the judge’s order].
“Counsel for Acceptance [Robert Rracke] attempted to answer the argument made by counsel for Hicks as follows:
“ ‘Now, he says that we step into the shoes of Donnie Joe Hicks. I promise you that if there was any way that Mr. Bryan could have found Donnie Joe Hicks, he would have had him here to testify in this case. Because he would have wanted to put him on the stand and drag him through all that stuff that happened out there. And then he says we can subrogate against him and try to collect back from him. I don’t know how we are going to be able to do that if he can’t find him. If Mr. Bryan can’t find him, how is Acceptance Insurance Company going to find the man? And we’re Mr. McBride’s own insurer.
“‘If you think they are entitled to punitive damages, double it and we can five with that. I think everybody could live with that. Because it isn’t going to do any good to do any punitive damages in this case when this is his own insurer. What good is it going to do? For all you know he’s still got his insurance with them. That don’t do him any good to get any punitive damages. What goes around, comes around, ladies and gentlemen. You put out punitive damages, what does that do? It does something to the insurance company. What goes around comes around....’
“In his final closing argument, counsel for McBride answered as follows:
“ What goes around comes around. That’s their attitude. Don’t punish Donnie Hicks, he ain’t here, he’ll never know about it. You know how he’ll know about it is if you send a message to him. They say they won’t ever have him here, they will. They’ll hire somebody just like Mr. Dudley to go find him and they’ll sue him just like they sued John in this case. That’s what will happen. They don’t want you to know the whole story. What goes around, comes around.’ ”
A trial judge has broad discretion in ruling on a motion for a new trial, and this *981 court -will not disturb a ruling on such a motion unless some legal right was abused and the record plainly and palpably shows that the trial court erred. Gold Kist, Inc. v. Tedder, 580 So.2d 1321, 1322 (Ala.1991). Also, in order for a party on appeal to complain of comments made at trial by opposing counsel, that party must have objected specifically to those comments, pointing out substantially the language objected to. Southern Electric Generating Co. v. Lance, 269 Ala. 25 at 30, 110 So.2d 627 at 630 (1959). The exception to this rule is stated as follows:
‘“An exception to the general rule requiring appropriate objection or motion invoking corrective instruction or action by the trial court is where the remark or argument of counsel is so grossly improper and highly prejudicial to the opposing party as that neither retraction nor rebuke by the trial court would have destroyed its sinister influence....”’
Cook v. Latimer, 274 Ala. 283, 286, 147 So.2d 831, 833 (1962) (quoting Colquett v. Williams, 264 Ala. 214, 86 So.2d 381 (1956)).
McBride argues that the trial court erred in granting a new trial in this case on the grounds that the argument of plaintiffs counsel was “improper and highly prejudicial” to the opposing party. McBride contends 1) that Acceptance’s trial strategy justified the arguments made by McBride’s counsel, 2) that arguments of McBride’s counsel were correct statements of the law, and 3) that the trial judge applied the wrong legal principles in granting Acceptance a new trial.
We have carefully studied the record in this case, and we conclude that the trial judge abused his discretion in ordering a new trial on the grounds that counsel for McBride had made “improper and highly prejudicial” arguments. Acceptance’s position, shown throughout the trial, was that it should not have to pay the full benefits called for under the policy if it would be difficult to enforce its subrogation rights against the uninsured motorist. Acceptance not only failed to object to the arguments of McBride’s counsel, but it invited such arguments by its trial strategy. During opening arguments, counsel for Acceptance asked the jurors to “render a fair and reasonable verdict in this action where Mr. McBride is suing his own insurance company.” This was trial strategy designed to direct the jury’s attention away from Donnie Joe Hicks, the uninsured motorist, and Acceptance’s obligation to pay McBride uninsured motorist benefits after accepting his premiums. See State Farm Mutual Automobile Insurance Co. v. Boyer, 357 So.2d 958 (Ala.1978). During the closing arguments in Boyer, counsel for the insured stated: “Anytime State Farm or any of those insurance companies can get out of paying based on one of these [exclusion] clauses they will do it.” Id. at 964. This Court held that this statement was a permissible “expression of a critical opinion of the attitude of the insurer.” Id.
Acceptance argued that the uninsured motorist might never be found and that McBride was not entitled to a full recovery because he was suing his own insurer. In response, McBride’s counsel argued to the jury that Acceptance stepped into Donnie Joe Hicks’s shoes and could seek reimbursement from Hicks. This was a correct statement of the law. The trial judge instructed the jurors that Acceptance stood “in the shoes of Hicks.” The trial judge stated in his jury charge:
“So what I’m trying to say is, in this case the insurance company stands in the shoes of Hicks, and is obligated to provide — to answer for whatever liability can be imposed on Hicks.
“... [L]et me say it another way. Acceptance is obligated to pay all amounts which Mr. McBride would be legally entitled to recover from Hicks, the owner and operator of an uninsured motorist vehicle, because of bodily injury sustained by McBride.
“So in order for McBride to recover under the insurance policy, he .has the burden of proving, to your reasonable satisfaction, that he is legally entitled to recover damages against Hicks, the owner and operator of the uninsured motor vehicle.
[[Image here]]
*982 “The contractual obligation assumed by Acceptance is only to pay such sums as the operator of the uninsured motor vehicle would be legally obligated to pay McBride for his injuries.”
Thus, the trial judge instructed the jurors that McBride was entitled to recover from Acceptance those damages that he could legally recover against Hicks.
Finally, the trial judge applied the wrong legal principles in granting a new trial to Acceptance, because this case involves subrogation rights, not indemnification. In his order granting a new trial, the trial judge stated what he considered to be authority for his action: “The Supreme Court of Alabama has held on a number of occasions that it is improper for counsel in the jury’s presence to refer to the right of indemnity.” (Citations omitted). While it is settled law that in a tort case the jury should not know of liability insurance that will indemnify the tort-feasor, uninsured motorist cases are different. In an uninsured motorist case, the jury always knows that there is an insurance company that will pay all or part of any amount assessed against the uninsured motorist.
For the reasons stated above, the order granting a new trial is reversed and the cause is remanded for the court to reinstate the judgment based upon the jury’s verdict. Because we reverse the new trial order and direct the trial court to reinstate the judgment in favor of McBride on the contact claim, we do not address the tort claims.
REVERSED AND REMANDED.
MADDOX, HOUSTON, KENNEDY, INGRAM and COOK, JJ., concur.