558 So.2d 877 (1989)
Cecil ISBELL, et al.
v.
Glenda Sue SMITH.
88-73.
Supreme Court of Alabama.
September 29, 1989.
As Modified on Denial of Rehearing December 15, 1989.
Rehearing Denied March 2, 1990.
Paul Millirons, Huntsville, for appellant Isbell.
Fob James III, Birmingham, for appellants Sullins and Core.
*878 James R. Knight and S. Lynn Marie McKenzie of Knight & Griffith, Cullman, for appellee.
HORNSBY, Chief Justice.
This case arises out of the sale of a business. The plaintiff, Glenda Sue Smith, sued Cullman Savings and Loan Association for an accounting. She also sued Mr. Isbell for breach of the sales contract by which he purchased her business.
Ms. Smith originally purchased the business involved in this action from her brother, Ray Bailey. Ms. Smith changed the name of the business from "Rayco" to "Graphic Communications, Inc.," upon purchasing the business, the real estate upon which the business was located, and some of the Rayco assets. In order to borrow the money to purchase this business, Ms. Smith and her husband mortgaged their home in Morgan County to Cullman Savings and Loan Association in Cullman, Alabama. The entire amount of the mortgage debt was $70,000; $40,000 was used to pay Bailey for the business.
The business and its real estate were in Huntsville. Ms. Smith's attorney, Charles Sullins, also in Huntsville, prepared the documents for the sale of the business. Sullins represented Ms. Smith and Graphic Communications, Inc., in the defense of several legal matters and other business matters involving the operation of the business. Ms. Smith began to have cash flow difficulties. Sullins referred two acquaintances, Cecil Isbell and Clint Core, to Ms. Smith to discuss their buying her business. After some discussion, Isbell and Core agreed to buy the business and the real estate from Ms. Smith. Sullins prepared the contract of sale.
The written agreement was entered into between Ms. Smith and her husband, Eldridge D. Smith, and Isbell for the sale of Graphic Communications, Inc., and the real estate. Paragraph 3 of the agreement referred to the $70,000 debt the Smiths owed to Cullman Savings and Loan Association, and the agreement further indicated that $40,000 of the debt had been incurred through a loan that had been used to purchase the business. Isbell, as purchaser, agreed to pay 4/7 of the total debt, i.e., $40,000. The remainder of the mortgage (3/7 or $30,000) was to be paid by Ms. Smith and her husband.
Between the date of the contract and the time the contract was actually "closed," Ms. Smith's husband died. Ms. Smith collected $30,000 in life insurance benefits, which she applied to the mortgage debt, in payment of 3/7 of her obligation.
Isbell took possession and began to operate the business. Sometime later, Isbell sold an interest in the business to Clint Core. Eventually, Isbell sold the remainder of his interest to Clint Core and Charles Sullins. The sale by Isbell to Core and Sullins was made pursuant to an agreement that purported to indemnify Isbell from loss. Core and Sullins operated the business until it went bankrupt several months later.
Several questions arose following the sale of the business by Ms. Smith. The first question was whether payments were made on the remaining $40,000 debt by Isbell and the subsequent purchasers, Core and Sullins. At some point, Ms. Smith learned from Cullman Savings and Loan Association that the mortgage on her home was in default and that it was threatening foreclosure. The purchasers also learned that before, and at the time of Ms. Smith's sale of Graphics Communications, Inc., to Isbell, a tenant was occupying a portion of the premises. That tenant, Specialty Packaging Company, Inc., and/or its owner, Ronnie Seymore, had entered into an unrecorded ten-year lease with Mr. Bailey, the original owner of the premises. The lease was "discovered" after the purchase of the business by Core and Sullins. All three purchasers contended that Ms. Smith told them that the lease was from month to month. Ms. Smith disagrees.
Subsequent to the Core-Sullins purchase of the business, two outstanding debts of the business came due. One debt was the payroll taxes for the last quarter of the fiscal year that had ended just prior to the signing of Smith's contract with Isbell. Another debt consisted of medical expenses *879 for an employee of Rayco, incurred before Smith purchased the business. Also, a question arose as to the amount, if any, owed by Smith to Sullins for legal fees for work done which was not connected with the sale of the business from Smith to Isbell.
Ms. Smith sued both Isbell and Cullman Savings and Loan Association in Cullman County Circuit Court. Ms. Smith claimed that Paragraph 3 of the agreement for the sale of the business had been breached when Isbell failed to pay the remaining 4/7 of the outstanding loan. Although Ms. Smith also claimed that Paragraph 5 of the agreement pursuant to which Isbell promised to pay Smith an additional $50,000, had been breached, this issue was severed by the trial court and is not at issue in this appeal.
Ms. Smith's claim against Cullman Savings and Loan Association was for an accounting. She alleged that she had paid 3/7 of the debt, and she asked for an accounting regarding the remaining amount due on the mortgage debt, which she contends was the responsibility of Isbell under her contract with him. Defendant Cullman Savings and Loan Association cross-claimed against Isbell, alleging that it was a third-party beneficiary under the sales contract between Ms. Smith and Isbell. Isbell filed a third-party complaint against the subsequent purchasers, Core and Sullins, based on the indemnity agreement signed at the time of the sale. Core and Sullins filed a claim against Ms. Smith alleging breach of contract, negligence, misrepresentation, and fraud. Core and Sullins alleged that Ms. Smith had negligently or recklessly misrepresented to them that Specialty Packaging had only a month-to-month oral rental agreement. Core and Sullins rely on the contract between Isbell and Smith as the basis for their claims against Smith. This Court does not accept this theory, yet such a theory does not affect the outcome of this decision.
The question of venue was raised before the trial court on several occasions. The trial court consistently ruled that venue was proper in Cullman County. The trial court also held, at one point, that Isbell, by not contesting venue at the appropriate time, had waived his right ever to contest it. The court entered summary judgment for Isbell on Isbell's third-party indemnity claim against Core and Sullins.
A jury trial was held on Smith's claim against Isbell under Paragraph 3 of the contract and on Core and Sullins's claim against Smith. Smith's claim against Cullman Savings and Loan Association for an accounting was reserved by the court, it being equitable in nature. The jury returned a verdict in favor of Ms. Smith for $80,125.03. The jury also returned a verdict for Ms. Smith on the Core-Sullins claims against her. Judgment was entered on those verdicts.
The defendants filed a motion for JNOV and a motion for new trial. The trial court observed that the plaintiff had requested that the judgment in her favor be reduced from $80,125.03 to $70,125.03 to conform to the evidence, and the court reduced the judgment accordingly. The trial court, also at the plaintiff's request, entered judgment for Sullins for $3,000 for attorney fees based on prior work he had done for her; that judgment was supported by the evidence. The trial court otherwise denied the motion for JNOV and for a new trial. As previously indicated, summary judgment was entered for Isbell against Core and Sullins on Isbell's indemnity claim. Isbell, Core, and Sullins have appealed.

ISSUES PRESENTED
The defendants have raised four issues on appeal to this Court. First, whether venue in Cullman County was proper; second, whether the trial court erred in overruling objections by counsel to closing arguments made with regard to Sullins's status as an attorney; third, whether the trial court abused its discretion in refusing a requested jury charge on whether the three purchasers were required to perform further under their contracts (i.e., to continue making Smith's payments to Cullman Savings and Loan Association) after Smith had committed an alleged material breach; and fourth, whether the trial court abused its *880 discretion in denying the three purchasers' motions for JNOV.

VENUE
Isbell, Core, and Sullins claim error with regard to the court's ruling on venue. The plaintiff sued an individual defendant, Isbell, and a corporation, Cullman Savings and Loan Association. An action brought by an individual "must be brought in the county where the defendant or any material defendant resides." Rule 82(b)(1)(A), A.R.Civ.P. Further, Alabama Code 1975, § 6-3-2(a)(2), provides that "[a]ll actions on contracts ... must be commenced in the county in which the defendant or one of the defendants resides." With respect to domestic corporations, § 6-3-7 provides that "a domestic corporation may be sued in any county in which it does business by agent or was doing business by agent at the time the cause of action arose."
This Court has defined the term "material defendant" as "`one whose position is antagonistic to that of the plaintiff's because relief is sought against him.'" Ex parte Shelby County, 516 So.2d 525, 527 (Ala.1987) (quoting Ex parte Ford, 431 So.2d 1194, 1196 (Ala.1983), quoting Alabama Youth Services Board v. Ellis, 350 So.2d 405, 408 (Ala.1977)). A material defendant has been further defined by this Court as "`a real and bona fide defendant whose interest in the result of the action is adverse to that of the plaintiff with respect to the cause of action against the other defendant.'" Ex parte Shelby County, 516 So.2d at 527 (quoting Copeland v. Loeb, 269 Ala. 295, 297, 112 So.2d 475, 477 (1959)).
Venue is determined at the time the suit is filed. Elmore County Comm'n v. Ragona, 540 So.2d 720, 725 (Ala.1989); Ex parte Shelby County, 516 So.2d 525, 527 (Ala.1987); Ex parte Hawkins, 497 So.2d 825 (Ala. 1986). Further,
"where several claims or parties have been joined, the suit may be brought in any county in which any one of the claims could properly have been brought. Whenever an action has been commenced in a proper county, additional claims and parties may be joined, pursuant to Rules 13, 14, 22 and 24, as ancillary thereto, without regard to whether that county would be a proper venue for an independent action on such claims or against such parties."
Rule 82(c), A.R.Civ.P. The burden of proving improper venue is on the party raising the issue. Ex parte Finance America Corp., 507 So.2d 458 (Ala.1987).
The original complaint was filed against Isbell, a resident of Madison County, and Cullman Savings and Loan Association, a domestic corporation doing business in Cullman County. Venue in Cullman County is proper as to Cullman Savings and Loan Association, because it "may be sued in any county in which it does business." Further, even though several parties have been joined in this lawsuit, the suit is proper in any county in which any one of the initial claims could properly have been brought. Rule 82(c), A.R.Civ.P.
Cullman Savings and Loan Association is a material defendant. Its position is most definitely antagonistic to that of the plaintiff. Ex parte Shelby County, supra. Plaintiff's claim against Cullman Savings and Loan Association was for an accounting of the payments applied to the mortgage debt. Her position is that she has paid the portion of the mortgage debt due to be paid by her pursuant to her separate contract with Isbell, and that the other original defendant, Isbell, is, by that same contract, liable for the balance of the debt. Cullman Savings and Loan Association asserts that either the plaintiff or Isbell is responsible for the debt, while Isbell contends that he is not responsible for the debt due to circumstances caused by the plaintiff. Thus, each party's claim is antagonistic toward the others.
Isbel, in losing on the merits before the trial court, properly raised this venue issue on appeal pursuant to Code 1975, § 6-8-101; but see, Elmore County Comm'n v. Ragona, 540 So.2d 720, 725 (Ala.1989), with regard to the proper use of mandamus.

*881 OBJECTIONS DURING CLOSING ARGUMENT
The second issue raised by the defendants (i.e., Isbell, Core, and Sullins) concerns remarks made during the trial with regard to Sullins's being an attorney. The defendants refer in their brief to "negative innuendo" throughout the trial, saying that the "pounding culminated in closing argument in subtle but insidious form." No objections were made during the trial, as the defendants admit, but the issue was raised in the post-trial motions. The plaintiff does not dispute that some negative statements were made, but insists that those statements were part of the exercise of counsel's skills of zealous advocacy for his client.
This Court has generally held that improper arguments by an attorney are not sufficient grounds for a new trial without a timely objection and a ruling by the trial court or a refusal by the trial court to make a ruling. Lawrence v. Alabama Power Co., 385 So.2d 986, 987 (Ala.1980). The exception to this rule is "where the comment is so prejudicial that its effect is ineradicable." Banner Welders, Inc. v. Knighton, 425 So.2d 441, 450 (Ala.1982). This Court has stated previously:
"The law in this area is concisely stated in Alabama Power Company v. Henderson, 342 So.2d 323 (Ala. 1977):
"`Without due objection by counsel or a motion to exclude and a ruling by the trial court, improper argument of counsel is not ground for new trial nor the subject of review on appeal. An exception is where it can be shown that counsel's remarks were so grossly improper and highly prejudicial as to be beyond corrective action by the trial court. The remarks in this case do not fall within that category of statements so grossly improper or highly prejudicial as to place it within the exception to the general rule. Since there was no timely objection by counsel, there is no error for this court to review. Johnson v. State, 272 Ala. 633, 133 So.2d 53 (1961); Anderson v. State, 209 Ala. 36, 95 So. 171 (1922); Prescott v. Martin, Ala. 331 So.2d 240 (1976).' (Emphasis added.)
"The plaintiffs contend that their motion was due to be granted because defense counsel's remark was so grossly improper and highly prejudicial as to be beyond corrective action by the trial judge.
"It is well established that a ruling on a motion for a new trial rests within the sound discretion of the trial judge. The exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error. Hill v. Cherry, 379 So.2d 590 (Ala.1980). In Calvert & Marsh Coal Company v. Pass, 393 So.2d 955 (Ala.1980), the Court stated:
"`... [E]ach case would have to be decided on its own merits and much would depend upon the issues, parties and the general atmosphere of a particular case. Lawrence v. Alabama Power Co., 385 So.2d 986 (Ala.1980). Viewed in the context argued, this one isolated remark does not fall within that category of remarks sufficiently prejudicial to place it within the exception to the general rule.
"`We have recognized that, since the trial court is present at the time when the argument is made, the trial court has great latitude in ruling on the propriety of counsel's arguments. Prescott v. Martin, 331 So.2d 240 (Ala. 1976). In particular, in passing on the question of ineradicable bias much should be left to the enlightened judgment of the trial court, with the usual presumptions in favor of the ruling made to that end. Alabama Power Co. v. Bowers, 252 Ala. 49, 39 So.2d 402 (1949); Pacific Mutual Life Insurance Co. v. Green, 232 Ala. 50, 166 So. 696 (1936)....'
"See also Daniel Construction Company v. Pierce, 270 Ala. 522, 120 So.2d 381 (1960), and State Farm Mutual Automobile Insurance Company v. Boyer, 357 So.2d 958 (Ala.1978).

*882 "There is no hard and fast rule as to when a remark made by counsel in closing argument is deemed to be so grossly improper and highly prejudicial as to be ineradicable from the minds of the jurors, notwithstanding a timely admonition from the trial judge. Each case must be decided in light of the peculiar facts and circumstances involved, and the atmosphere created, in the trial of each particular case.
"Defense counsel's closing argument in the present case was not transcribed by the reporter. The record contains only the jury's verdict, the trial court's judgment entered on the verdict, the plaintiff's motion for a new trial, and the trial judge's order denying that motion. Thus, we have no record of the exact remark, nor of the context in which the remark was made. The trial judge recognized the impropriety of the remark in his order denying the plaintiffs' motion for a new trial, and acknowledged that he would have sustained an objection to it, had one been made, and would have admonished the jury accordingly. It is clear that the trial judge did not consider the remark's effect on the jury to be so prejudicial as to be beyond cure."
Hill v. Sherwood, 488 So.2d 1357, 1358-59 (Ala. 1986).
In this case, there were no objections made during the argument. The record contains only the objection to a reference in the plaintiff's closing argument that the plaintiff could lose her home by losing this case. That objection was made just after the closing argument and was overruled by the trial judge. The trial judge felt that any such remarks constituted proper argument, and such a ruling by the trial court rests within his sound discretion and will not be disturbed in the absence of plain and palpable error. Hill v. Cherry, 379 So.2d 590, 592 (Ala. 1980). A reading of the record reveals that the statements made throughout the trial are not so cumulative that they were beyond the ability of the trial court to cure. Without further objections in the record or a motion for curative remarks, there is no basis for a contention of error.

JURY CHARGE
The defendants claim error in that specific jury charges were not given by the trial judge.
The defendants claim that a jury charge should have been given stating that if "Plaintiff did not perform under the contract, then you must find that the Defendants were discharged from their duties to perform under the contract." An additional charge was submitted to the trial court which was also refused. This charge included a recital of particular facts and a charge that "[i]f you find from a preponderance of the evidence that this existence of the lease was a material breach of the contract ... then you must find that [the defendants] were legally discharged from having to make any payments to [the plaintiff]." Rule 51, A.R.Civ.P., states clearly that
"[t]he refusal of a requested, written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's oral charge or in charges given at the request of the parties."
This rule is fully supported by the case law. See Coleman v. Steel City Crane Rentals, Inc., 475 So.2d 498 (Ala.1985), cert. denied, 476 U.S. 1104, 106 S.Ct. 1946, 90 L.Ed.2d 356 reh'g denied, 477 U.S. 909, 106 S.Ct. 3287, 91 L.Ed.2d 575 (1986); Long Lewis Hardware Co. v. Lightsey, 392 So.2d 545 (Ala.Civ.App.1980), cert. denied, 392 So.2d 548 (Ala. 1981); M.C. West, Inc. v. Battaglia, 386 So.2d 443, 449 (Ala.Civ. App.), cert. denied, 386 So.2d 450 (Ala. 1980); American Fire & Cas. Ins. Co. v. Bryan, 379 So.2d 605 (Ala.Civ.App. 1979).
A review of the record in this case reveals that the requested charge was fairly and substantially covered by the charge given. The court gave a general charge as to the elements of a contract, including a statement regarding the plaintiff's performance. The court also included a statement regarding the lease in its beginning *883 charges to the jury. Additionally, extensive instructions were given with regard to any possible misrepresentations made by the plaintiff.
The defendants further claim error with regard to evidentiary rulings made by the trial court. Specifically, the trial judge refused to admit certain letters, which the defendants claim would show the legal importance of the lease and the materiality of the plaintiff's alleged breach and would support their claim for damages. A review of the record reveals that the original lease was made a part of the record. Further, the trial court allowed testimony from witnesses about the information contained in the letters. The rulings on objections during the witnesses' testimony were in favor of the defendants. The rulings by the trial court in this regard were proper.

DENIAL OF POST-TRIAL MOTIONS
The defendants' final assertion of error concerns the denial of their motions for JNOV. A motion for JNOV should be denied if there is any conflict in the evidence for the jury to resolve. Gary v. Kirkland, 514 So.2d 970, 971 (Ala.1987); Elrod v. Ford, 489 So.2d 534, 537 (Ala. 1986), citing Handley v. City of Birmingham, 475 So.2d 1185, 1187 (Ala. 1985).
Further, in this Court's review of a JNOV, the evidence must be viewed in a light most favorable to the nonmoving party. Id., citing Wadsworth v. Yancey Bros. Co., 423 So.2d 1343, 1345 (Ala.1982). A motion for JNOV is properly granted only when the movant would have been entitled to a directed verdict. Luker v. City of Brantley, 520 So.2d 517, 521 (Ala.1987); Wright v. Fountain, 454 So.2d 520 (Ala. 1984). "Such a motion tests the sufficiency of the evidence and, if granted, discloses that, without weighing the credibility of the evidence, there can be only one reasonable conclusion from the evidence as to the proper judgment." Luker, 520 So.2d at 521, citing Morgan v. South Central Bell Telephone Co., 466 So.2d 107 (Ala. 1985).
A review of the record reveals that the motion for JNOV was properly denied. The trial court's judgment is due to be affirmed.
AFFIRMED.
MADDOX, JONES, ADAMS and STEAGALL, JJ., concur.

ON APPLICATION FOR REHEARING
HORNSBY, Chief Justice.
APPLICATION OVERRULED; OPINION MODIFIED.
MADDOX, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
JONES and ADAMS, JJ., dissent.
ADAMS, Justice (dissenting).
I dissent from the denial of rehearing. Rule 82(b)(1)(A), A.R.Civ.P., provides that actions against an individual or individuals having a permanent residence in this State must be brought in the county where the defendant or any material defendant resides at the commencement of the action.
Plaintiff sued Cullman Savings and Loan Association and three individuals who resided in Madison County. The only claim made against Cullman Savings & Loan Association was for an accounting. The trial judge severed this part of the case from the issues in the litigation before us today.
The threshold issue is whether, based on the presence of Cullman Savings and Loan Association as a defendant in the litigation, venue was proper in Cullman County. In order to maintain this action in Cullman County, the savings and loan association must have been a material defendant. In other words, the presence of Cullman Savings and Loan as a defendant should not be allowed to create venue in Cullman County if it is not a material defendant. To rule otherwise would allow a sham defendant to be interposed in a lawsuit merely to establish venue in a desired county in multiple-party cases where the other defendants are residents of other counties.
On reconsideration, I do not believe that Cullman Savings and Loan Association is a material defendant. We have said that a "material defendant" is "one whose position *884 is antagonistic to that of the plaintiff because relief is sought against him." Ex parte Ford, 431 So.2d 1194, 1196 (Ala. 1983). We have also said that a material defendant is "a real and bona fide defendant whose interest in the result of the action is adverse to that of the plaintiff with respect to the cause of action against the other defendant." Ex parte Shelby County, 516 So.2d 525, 527 (Ala.1987). Here, there is no adverseness in the true sense between the plaintiff and the savings and loan association. Plaintiff is seeking money from the other defendants, who reside in Madison County, to pay off the balance of the debt due to the savings and loan association, and the association is interested in getting paid. In that sense, Cullman Savings and Loan Association probably should have been realigned as a plaintiff. As a matter of fact, defendants Sullins and Core made a motion to the trial court prior to its final ruling on venue, stating that "Cullman Savings and Loan Association should be realigned as a plaintiff in this action, if it is to remain a party." However, the trial court did not rule on this motion. So similar are the interests of the plaintiff and the savings and loan association that on appeal the savings and loan association joined in and adopted the plaintiff's brief as its own. Furthermore, the trial judge indicated early on in the litigation that any order that he might render for any sum of money, if any, would be in favor of the plaintiff Smith and/or Cullman Savings and Loan Association.
We said in Copeland v. Loeb, 269 Ala. 295, 112 So.2d 475 (1959):
"Where there are several defendants and the residence of one is made determinative of the venue of the action, the complaint must state a cause of action against the said defendant; ... the resident defendant must be a party against whom relief is sought.... The resident defendant must be a real and bona fide defendant whose interest in the result of the action is adverse to that of the plaintiff with respect to the cause of action against the other defendant."
269 Ala. at 297, 112 So.2d at 477. (Emphasis added.)
For the foregoing reasons, I must respectfully dissent from the denial of the application for rehearing in this cause. Plaintiff does not meet the threshold requirement of venue as set out in our cases and rules of court.
JONES, J., concurs.