Cloverleaf Plaza, Inc. ("Cloverleaf"), and DLC Partnership ("DLC") are the former owners of Cloverleaf Plaza Shopping Center in Mobile, Alabama. Jake Doster, president of Cloverleaf and a partner in DLC, decided to sell the shopping center. Upon hearing of Doster's plans to sell, Glenn Southerland, a real estate broker with Cooper Company Inc. ("Cooper"), contacted Doster to obtain a listing agreement for the property. Southerland told Doster that he had a purchaser for the property if Doster would sell. *Page 1148 
On December 13, 1986, Doster signed an agreement whereby Southerland was authorized to show the property to Stuart Davies, whom Southerland had named as the potential purchaser. On the non-exclusive listing agreement, which provided for a 5% commission for Cooper, Doster wrote, "Stuart Davies, Inc. — only — J.D.". Ultimately, the deal with Stuart Davies fell through and was never consummated. On March 6, 1987, another non-exclusive listing agreement was entered into by Cooper and Cloverleaf, signed by Doster. This agreement gave Cooper until March 16 to show the property and provided that, if the property was sold within 60 days of March 16 to a purchaser who had been shown the property during the 10-day period, Cooper would be entitled to a $100,000 commission, rather than the 5% commission provided for in the December 13 contract. The agreement also provided that Cloverleaf had the sole discretion to accept or reject any offer, and that upon a rejection Cooper would not be entitled to the commission.
Glenn Southerland presented another potential purchaser, Capital Realty Management, Inc. ("Capital"), whose lawyer, Richard Davis, began negotiations with Cloverleaf's lawyers, Tom Garth and David Johnson, with respect to the sale of the property. Cooper sent another non-exclusive listing agreement to Cloverleaf, which agreement would expire on August 31, 1987. Cloverleaf, however, never signed this listing agreement. On August 21, Capital made an offer to purchase Cloverleaf Shopping Center. The parties agree that there were two points in the offer that Cloverleaf would not accept: 1) that the seller be required to obtain estoppel letters from the tenants of the shopping center; and 2) that the seller pay off the then current management company, the amount being about $150,000. The lawyers continued to negotiate. The parties disagree as to whether, after the further negotiations, they ever reached an agreement as to the terms just mentioned. Cooper asserts that Cloverleaf agreed to pay the management company and to obtain the estoppel letters. Cloverleaf denies agreeing to either.
In the meantime, Doster, acting on behalf of Cloverleaf and DLC, was negotiating directly with Ken Montgomery, who was a real estate broker with Triple Crown Realty.[1] On September 2, 1987, Montgomery offered to purchase the shopping center for $3,025,000, which was higher than the $3,012,000 offered by Capital. Further, Montgomery's offer did not require that Cloverleaf pay the management company or obtain estoppel letters. On September 8, 1987, Capital's lawyer submitted an unsigned sales contract to Tom Garth, Cloverleaf's lawyer, reflecting their negotiations that had taken place after the original offer of August 21 had been rejected. On September 3, however, Doster had accepted an offer from Triple Crown, whose rights were then assigned to Tillman's Corner Limited Partnership. Cloverleaf paid Triple Crown a $100,000 commission. Upon hearing of the sale to Triple Crown, Capital contended that its lawyer and Cloverleaf's lawyer had reached an agreement. Cooper contended that it had presented a buyer who was ready, willing, and able to buy on terms negotiated with Cloverleaf's lawyer, and that, therefore, it was due to be paid a $100,000 commission. A jury verdict was returned in favor of Cooper, awarding it $100,000 plus interest. Judgment was entered by the trial court, after which Cloverleaf filed a motion for a JNOV or, in the alternative, a new trial on the ground that the verdict was against the great weight of the evidence. The trial court denied both of Cloverleaf's post-judgment motions, from which denial Cloverleaf appeals. We affirm.
Unless a jury verdict is unsupported by the evidence or is so against the weight of the evidence as to be manifestly and palpably wrong, a judgment based upon that verdict, which was sustained by the trial court's denial of a post-judgment motion for new trial, will not be reversed on either an "insufficiency of the evidence" *Page 1149 
ground or on a "weight of the evidence" ground. Michael v.Gunnin Pulpwood, Inc., 533 So.2d 588 (Ala. 1988). "A jury verdict is presumed correct, and no ground for a new trial is more carefully scrutinized or more rigidly limited than an assertion that a jury verdict is against the weight of the evidence." Hallman v. Summerville, 495 So.2d 626, 627 (Ala. 1986). Upon the denial of a post-judgment motion for a new trial, this presumption is strengthened "and [a verdict] will not be set aside unless so contrary to the evidence 'as to convince this court that it is wrong and unjust.' " Kent v.Singleton, 457 So.2d 356, 359 (Ala. 1984) (quoting DixieElectric Co. v. Maggio, 294 Ala. 411, 414, 318 So.2d 274, 276
(1975)). Further, a motion for a JNOV is properly denied where there exists any conflict in the evidence for consideration by the jury. Isbell v. Smith, 558 So.2d 877 (Ala. 1989) (citingGary v. Kirkland, 514 So.2d 970, 971 (Ala. 1987); Elrod v.Ford, 489 So.2d 534, 537 (Ala. 1986)). Applying these standards to the facts of this case, we conclude that the trial court properly denied both post-judgment motions.
Cloverleaf and DLC argue that a commission is not owed Cooper because, they say, there was no listing agreement in effect at the time Capital was presented as a potential purchaser. They argue that the agreement entered into on December 13, 1986, was ineffective because it was limited to Stuart Davies; that the second agreement expired by its own terms on March 16, 1987; and that Doster never signed the third and final agreement that Cooper presented Cloverleaf in August 1987, which was to expire on August 31, 1987. Without a valid listing agreement, Cloverleaf argues, no commission is due. However, in Alabama, a contract between a seller and real estate broker, whereby the broker is to procure a purchaser for realty, need not be in writing. Hover v. Whittaker-Warren Agency, 56 Ala. App. 255,321 So.2d 213 (Ala.Civ.App. 1975). Further, a signature is merely an indication of mutuality and assent, which may be shown in other ways; and, if a contract is accepted and acted upon, it need not be signed, provided a statute does not provide otherwise. Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297
(Ala. 1986). Capital's lawyer, Richard Davis, testified in deposition that he dealt solely with Cloverleaf's lawyer, because of ethical considerations. Further, he testified that after hearing about the deal between Doster and Triple Crown, he was told by Cloverleaf's lawyers to just sit back and wait because it was doubtful that that deal would go through, and then Capital would be back in the "driver's seat." Southerland, Cooper's broker, testified that he was told by Garth, "[D]on't worry about your commission — it's covered."
Moreover, the jury was entitled to infer from the totality of the evidence that Cloverleaf's lawyer was authorized to pursue negotiations for the sale of the property to Cooper's client and that the terms of the sale as agreed upon through these negotiations with Cooper's client amounted to the procurement of a "ready, willing and able" purchaser of the Cloverleaf property. As this Court has stated:
 "It is not for us to decide the issues of fact in the case, but whether there is sufficient evidence upon which the verdict of the jury may be predicated. If there is a conflict in the evidence in a material respect it is for the jury to settle that conflict and not for the court. . . ."
Herrington v. Hudson, 262 Ala. 510, 514, 80 So.2d 519, 522
(1955).
In summation, the evidence was such that a reasonable jury could have gone either way; however, the jury rendered its verdict in favor of Cooper, and this Court will not disturb the judgment entered thereon.
Accordingly, this judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] Cloverleaf's lawyers testified that they were not aware of Doster's negotiations with Montgomery. *Page 1150