Rel: September 13, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2024

_____

### SC-2024-0037
_____

## A & W Contractors, LLC

### v.

## Jameson Colbert and Katherine Colbert

### Appeal from Jefferson Circuit Court
### (CV-20-900370)

SELLERS, Justice.

A & W Contractors, LLC ("A&W"), appeals from a judgment in favor

of Jameson Colbert and Katherine Colbert in the Colberts' action against

A&W arising out of a real-estate sales contract. We affirm in part, reverse in part, and remand.

## I. Facts and Procedural History

In February 2019, the Colberts entered into a real-estate sales contract ("the contract") with A&W to purchase an approximately 54-year-old house that A&W had remodeled.[1] Before the closing, the Colberts had a home inspection, which revealed that the plumbing and/or septic system was "backed up and failing to drain properly" and that the electrical wiring was not "up to code." Regarding the electrical wiring, the Colberts claimed that certain areas of the house were wired with antiquated "fabric-sheathed" wire connected to 2-prong, nongrounded outlets and that A&W had installed 3-prong outlets that were not grounded in other areas of the house. The Colberts deemed the issues with the electrical, plumbing, and septic systems nonnegotiable. Accordingly, the parties amended the contract to reflect that A&W agreed to (1) inspect all three-prong outlets to confirm that they were properly grounded, (2) install ground-fault breakers, (3) have a plumber "re-route

---

[1]Katherine Colbert's mother, Laura D. Grill, was also a signatory to the contract; however, she is not a party to this appeal.

Temp & Pressure Relief valve plumbing to ensure[, among other things,] proper sloping and runoff" and confirm that the plumbing will "follow code," and (4) furnish the "recent septic cleaning and inspection" report. After A&W represented that it had addressed the issues with the electrical and plumbing systems, the Colberts had those systems reinspected. According to the Colberts, their inspector told them that the plumbing was draining and that the electrical outlets "tested for ground." During their final walk-through inspection of the house, however, the Colberts remained hesitant about the house's electrical wiring, and they decided to cancel the contract. According to Jameson Colbert, A&W's real-estate agent thereafter sent Katherine Colbert a text message informing her that A&W had "offered" a three-month builder's warranty on the remodeling work in the hope that the parties could move forward with the closing. The Colberts thereafter closed on the sale of the house; however, after moving into the house, and within the alleged three-month warranty period, they began to experience significant problems with the electrical, plumbing, and septic systems.[2] The Colberts initially

---

[2]According to the Colberts, (1) the outlets had not been properly grounded but, rather, had been manipulated to make it appear that, when tested by a circuit-breaker-tester tool, they were grounded; (2)

contacted A&W about the electrical issues; A&W sent an electrician to the house to address those issues. However, when the Colberts contacted A&W about the plumbing issues and requested that those issues be repaired under the three-month builder's warranty, A&W denied the existence of a builder's warranty. The Colberts had no more contact with A&W; rather, they spent approximately $90,000 to have the issues with the plumbing, electrical, and septic systems repaired. The Colberts then commenced this action, which proceeded to a jury trial. At trial, the Colberts took the position that they would not have purchased the house if they had known that A&W would not honor the three-month builder's warranty. A&W, on the other hand, took the position that the parties' contract was conclusive as to all issues and that, pursuant to the plain terms of the contract, the Colberts had, among other things, assumed all risks as to the condition of the house upon the closing. At the close of the Colbert's evidence, A&W moved for a judgment as a matter of law

---

there was an active leak in the upstairs bathroom, which caused extensive damage to the ceiling in the downstairs bathroom, causing it to collapse; (3) after the floor of the upstairs bathroom had been cut open to determine the cause of the leak, Jameson Colbert observed, among other things, cut joists, an inadequately sized drain, and the absence of a shower pan; and (4) the septic system was backed up and had not been cleaned out or inspected as represented by A&W.

("JML"), pursuant to Rule 50, Ala. R. Civ. P. The trial court denied that motion. At the close of all the evidence, the Colberts moved for a JML on their breach-of-contract claim. The trial court initially denied that motion but, after a brief recess, ruled that, as a matter of law, A&W had breached the contract. The case proceeded to the jury on claims of fraudulent misrepresentation and fraudulent concealment and for a determination of damages on the breach-of-contract claim. The jury awarded the Colberts $32,208.50 on the breach-of-contract claim. It also returned a verdict in their favor on the fraud claims, awarding them $32,208.50 in compensatory damages and $30,000 in punitive damages. The trial court entered a judgment on the jury verdict. A&W filed a motion to alter, amend, or vacate the judgment or, alternatively, for a new trial, which the trial court denied. This appeal followed.

## II.  Standard of Review of a JML

"When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So. 2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So. 2d 1350 (Ala. 1992). For actions filed after June 11, 1987, the nonmovant must present substantial evidence in order to withstand a motion for a JML. See § 12-

21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So. 2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So. 2d 1126 (Ala. 1992)."

Employees' Benefit Ass'n v. Grissett, 732 So. 2d 968, 974-75 (Ala. 1998).

### III.  Discussion

#### A.  The JML on the Breach-of-Contract Claim

The first issue raised by A&W is whether the trial court erred in entering a JML in favor of the Colberts on their breach-of-contract claim. The Colberts claimed that A&W had breached the contract by failing to provide a septic-system report and by failing to repair the electrical and plumbing issues. In a breach-of-contract action, the plaintiff must prove "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." Southern Med. Health Sys., Inc. v. Vaughn, 669 So. 2d 98, 99 (Ala. 1995).  The parties do not dispute the existence of a valid contract or that the purchase of the house was

6

governed by that contract. See Kidd v. Benson, 321 So. 3d 676, 681 (Ala. 2020) (plurality opinion) ("The language of a real-estate sales contract defines the responsibilities of each party to the contract."). Although the record indicates that the Colberts had identified approximately 20 witnesses on their witness list, only Jameson Colbert testified regarding the breach-of-contact claim. Jameson testified, in relevant part, about the repairs that A&W had agreed to perform under the contract, the problems that the Colberts had experienced with the electrical, plumbing, and septic systems after moving into the house, and the costs associated in repairing those systems. After the Colberts rested their case, A&W did not provide any witness testimony. Rather, it relied primarily on Jameson's testimony elicited on cross-examination regarding his knowledge and understanding of certain provisions of the contract the Colberts had signed. For example, counsel for A&W questioned Jameson about an addendum to the contract that was signed by all the parties. Provision A of the addendum originally stated that the Colberts and A&W "agree to meet at the property … on Friday, April 19, 2019[,] to review the repairs." Provision A was crossed out and replaced with the following language: "Repairs have been approved by buyers as

7

of Friday, April 19th." Provision B of the addendum states: "If all repairs are found agreeable by both parties, Buyers and Seller agree to closing by 5 p.m. on Monday, April 29, 2019." The closing occurred on April 29. When questioned by defense counsel about the addendum, Jameson testified:

>"[Defense counsel]: And you understood, again, that you were to be bound by the terms of the contract, correct?
>
>"[Jameson]: Yes.
>
>"[Defense counsel]: And you signed off … you signed off on all the repairs being done and they were acceptable to you, correct?
>
>"[Jameson]: Correct."

Jameson also admitted to initialing paragraph 21 of the contract pertaining to the final walk-through inspection. That paragraph states in bold writing, in relevant part, that, "[a]fter closing, all conditions of the property are the responsibility of the [Colberts] unless otherwise stated within this Contract." Jameson also testified that, although the contract required A&W to produce an inspection report regarding the health of the septic system, he and his wife had closed on the sale without the report because, according to him, they were ready to move in. In fact, there was no testimony indicating whether the Colberts requested

the septic-system report at the closing. Finally, although the Colberts claimed that they would not have purchased the house had they had known there was not a three-month builder's warranty, Jameson acknowledged that he had initialed paragraph 30 of the contract, stating that neither the buyer, the seller, nor any real-estate agent "shall be bound by any … representation concerning the property … not specified herein …." When questioned by defense counsel, Jameson admitted that there was no provision in the contract regarding a builder's warranty:

> "[Defense counsel]: Okay. And nowhere in this contract or its addendums anywhere does it discuss or specify a [three-month builder's warranty], correct?

> "[Jameson]: We did not want to rewrite the contract.

> "[Defense counsel]: Well, my question is: It's not in here, correct?

> "[Jameson]: Correct.

> "….

> "[Jameson]: We took [the contractor] at his word.

> "[Defense counsel]: All right. Now, again, the representation [about the three-month builder's warranty] was made by [A&W's real-estate agent], correct?

> "[Jameson]: Who represents him."

As previously indicated, at the close of all the evidence, the Colberts moved for a JML on their breach-of-contract claim. The trial court initially denied the motion but, after a brief recess, changed course and granted it. According to A&W, the trial court granted the motion for a JML based on A&W's failure to offer any witness testimony, thus improperly shifting the burden to A&W:

> "[Defense counsel]: Well, Your Honor, I believe based on what's been presented to the Court, obviously, [A&W] would [submit] that it is a factual question … whether or not each one of the paragraphs that was read into the record by [Jameson] in cross-examination would present a factual question as to [which] terms of the contract were breached.
>
> "[The trial court]: I think that [it is] still your responsibility to argue that to the jury and then that's the ultimate decision.
>
> "[Defense counsel]: … The [Colberts have] the burden in this case throughout to show not only the facts, but to reach that legal burden of what constitutes a contract and then what constitutes … a breach of contract.
>
> "[The trial court]: When you offered no testimony, then that was definitely a surprise because it left a lot -- my interpretation then had to be of what was before me, cross-examination and direct examination, and I just find there was a breach of contract, that all of the elements are there, and that should not be for the jury …."

In Lavett v. Lavett, 414 So. 2d 907, 911-12 (Ala. 1982), this Court explained the following regarding the burden-shifting process:

10

"Prima facie evidence may be defined as evidence which suffices for proof of a particular fact until the fact is contradicted by other evidence. <u>Tittle v. State</u>, 252 Ala. 377, 41 So. 2d 295 (1949). Prima facie evidence is the quantum of evidence necessary to prevent an action from being dismissed for failure to state a claim. <u>See</u> J. Hazard, <u>Civil Procedure</u> (1978). If no other evidence is submitted to contradict the prima facie evidence, the party presenting the evidence is entitled to judgment. In other words, a prima facie case meets the party's burden of proceeding, <u>and if no contradictory evidence is permitted</u>, it also meets his or her burden of proof.

"The burden of proof does <u>not</u> shift to the other party by presentation of a prima facie case. <u>The burden of proof remains with the plaintiff. If the other party introduces evidence to contradict the prima facie evidence, that party has met its burden of proceeding</u>, and the issue is in the domain of the factfinder. It is only when a party presents a certain high quantum of evidence that establishes no doubt as to his or her right to a verdict, that a [JML] may be granted in the party's favor."

(Emphasis added.)

The Colberts had the burden to demonstrate each and every element of their breach-of-contract claim. Although the Colberts presented prima facie evidence in support of their breach-of-contract claim, A&W elicited sufficient testimony on cross-examination to contradict that evidence, thus creating a conflict warranting jury consideration. Jameson's direct testimony was self-serving and did not establish such a "high quantum of evidence" that it left no doubt that the

11

Colberts were entitled to a JML on their breach-of-contract claim. Id. When a genuine issue of a material fact exists, the jury must play its traditional role as fact-finder. See Cloverleaf Plaza, Inc. v. Cooper & Co., 565 So. 2d 1147, 1149 (Ala. 1990) (noting that a motion for a JML should be denied if there is any conflict in the evidence to be resolved by a jury). Factual conflicts are not established merely by competing witnesses submitting divergent evidence; rather, factual conflicts are also presented when the testimony of a single witness is not conclusive because of other facts presented in evidence, which subjects the testimony to differing interpretations. In such a scenario, those questions of fact should be resolved by the jury. Here, although only Jameson testified, his testimony as the plaintiff still required him to carry his burden of proof; nothing required A&W to provide any testimony.[3] However, Jameson's testimony was not conclusive; rather, it revealed a conflict with regard to what the contract said, how he acted based on his interpretation of the contract, and the consequences of his actions (or lack thereof). Based on the foregoing, we conclude that the

---

[3]Notably, a representative from A&W had given a deposition and was also present at trial. However, the Colberts neither called the representative to testify nor relied on his deposition testimony.

trial court erred in entering a JML in favor of the Colberts on their breach-of-contract claim.

### B. The Judgment on the Fraudulent-Misrepresentation Claim

A&W presents multiple arguments in support of its contention that the trial court erred in allowing the jury to consider the fraudulent-misrepresentation claim concerning the three-month builder's warranty. A&W's first argument raises an evidentiary challenge. As previously indicated, Jameson testified at trial that A&W's real-estate agent had sent Katherine Colbert a text message stating that A&W had offered a three-month builder's warranty on its remodeling work and that the Colberts had purchased the house based on that representation. A&W, however, denied the existence of a builder's warranty. A&W argues that the trial court erred in allowing the jury to consider the fraudulent-misrepresentation claim because, it says, neither the real-estate agent nor Katherine testified at trial regarding the builder's warranty or the text message. However, during the trial, A&W never objected to Jameson's testimony regarding the builder's warranty, nor did it object when a screenshot of the text message was admitted into evidence. Thus, A&W failed to preserve this evidentiary issue for appellate review. See

13

ITEC, Inc. v. Automated Precision, Inc., 623 So. 2d 1139, 1140 (Ala. 1993) ("Issues not raised before the trial court will not be considered for the first time on appeal.").

A&W presents three additional arguments that, it says, precluded the jury from considering the fraudulent-misrepresentation claim; those arguments relate to the sufficiency of the evidence concerning the element of reliance. See Moore v. Prudential Residential Servs. Ltd. P'ship, 849 So. 2d 914, 923 (Ala. 2002) (noting that an essential element of any fraud claim is that the plaintiff must have reasonably relied on the alleged misrepresentation). A&W argues that the evidence was insufficient to demonstrate that the Colberts reasonably relied on any representation of A&W's real-estate agent regarding a builder's warranty because, it says, (1) the existence of paragraph 30 in the contract, known as a merger or integration clause, barred such reliance; (2) the existence of paragraph 11 of the contract, concerning representations about the condition of the property, barred such reliance; and (3) the fact that the Colberts both personally inspected the property and had it inspected by a professional barred such reliance. However, A&W did not move for a JML at the close of all the evidence pursuant to Rule 50(a), Ala. R. Civ.

14

P., which is required to preserve an objection to the sufficiency of the evidence. See Committee Comments on 1973 Adoption of Rule 50; and Cook's Pest Control, Inc., v. Rebar, 28 So. 3d 716, 722 (Ala. 2009). Thus, we are precluded from considering A&W's arguments concerning the sufficiency of the evidence supporting the element of reliance of the Colberts' fraudulent-misrepresentation claim.[4]

### C. The Judgment on the Fraudulent-Suppression Claim

A&W finally argues that the trial court erred in submitting the fraudulent-suppression claim to the jury because, it says, the Colberts offered no evidence to indicate that A&W had actual knowledge of any latent defects affecting health and safety. A&W bases its argument upon the health-and-safety exception to the doctrine of caveat emptor. See

---

[4]Assuming that A&W had properly preserved those arguments for review, they have no merit. Paragraph 11 of the contract, concerning a real-estate agent's representations about the condition of the property, is inapplicable because the agent in this case made no representations about the condition of the property; rather, she represented that A&W had offered a builder's warranty for its remodeling work. Next, paragraph 30 of the contract, known as a merger or integration clause, is "not applicable to exclude evidence relating to a fraud claim." Environmental Sys., Inc. v. Rexham Corp., 624 So. 2d 1379, 1383 (Ala. 1993). Finally, A&W's argument that the existence of a home inspection precludes the Colberts' reasonable reliance has no merit, because the authority on which A&W relies is entirely irrelevant to the facts of this case.

Fennell Realty Co. v. Martin, 529 So. 2d 1003, 1005 (Ala. 1988) (noting that, in the context of a used house, "if the agent (whether of the buyer or of the seller) has knowledge of a material defect or condition that affects health or safety and the defect is not known to or readily observable by the buyer, the agent is under a duty to disclose the defect and is liable for damages caused by nondisclosure"). Notably, the exact nature of the facts that A&W allegedly suppressed is not clear. However, it is clear from the record that, during the proceedings below, the parties disputed whether the doctrine of caveat emptor applied under the facts of the case; the trial court did not instruct the jury on the doctrine of caveat emptor and its exceptions; and, most importantly, A&W never objected to the general instructions that the trial court gave the jury regarding fraudulent suppression. Accordingly, A&W failed to preserve for appellate review its argument that the trial court had erred in allowing the jury to consider the fraudulent-suppression claim. See McElmurry v. Uniroyal, Inc., 531 So. 2d 859, 859 (Ala. 1988) (noting than "an objection to the trial court's oral charge must be made at the close of the court's initial instructions to the jury, and it must be stated with sufficient clarity or specificity to preserve the error").

16

## IV.  Conclusion

The judgment entered on the jury verdict in favor of the Colberts on their fraud claims is affirmed. The JML entered in favor of the Colberts on their breach-of-contract claim is reversed, and the case is remanded for proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Parker, C.J., and Wise, Stewart, and Mitchell, JJ., concur.

Cook, J., recuses himself.